Christian Schreiber (Cal. Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 658-7758

Rory Quintana (Cal. Bar No 258747)
rory@qhplaw.com
Ramsey Hanafi (Cal. Bar No. 262515)
ramsey@qhplaw.com
QUINTANA HANAFI, LLP
870 Market Street, Suite 819
San Francisco, CA 94102
Telephone: (415) 504-3121
Facsimile (415) 233-8770

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN HIDALGO, COURTNEY BENTLEY, and GAVIN BOOMER,<br><br>Plaintiffs<br><br>v.<br><br>GLOBAL K9 PROTECTION GROUP LLC,<br><br>Defendant. | Case No. 3:20-cv-02780-VC<br><br>**NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING; MEMORANDUM IN SUPPORT OF JOINT MOTION; DECLARATIONS OF CHRISTIAN SCHREIBER, MARK BISHOP, AND JAMES MARTY STEWART; EXHIBITS**<br><br>Date: May 20, 2021<br>Time: 2:00 p.m.<br><br>Hon. Vince Chhabria |

## NOTICE OF MOTION AND MOTION

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on Thursday, May 20, 2021, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 4 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California 94102, before the Honorable Vince Chhabria, Plaintiffs Justin Hidalgo, Courtney Bentley, and Gavin Boomer ("Plaintiffs") and Defendant Global K9 Protection Group LLC ("GK9" or "Defendant") (collectively, the "Parties") jointly move the Court to (1) certify a Settlement Class defined as: "All individuals employed by Defendant as canine handlers ("handlers") at any time between April 21, 2016 through February 15, 2021 who either (*a*) worked for Defendant in California or (*b*) worked for Defendant outside of California and opted into the collective action."; (2) preliminarily approve the parties' proposed class action settlement (the "Settlement"); (3) appoint Plaintiffs as the Class Representatives, their counsel as Class Counsel, and CPT Group, Inc. as Settlement Administrator; (4) approve the form of notice to the class of the Settlement; and (5) schedule a hearing on the final approval of the Settlement. The Parties make this motion on the grounds that the Settlement is fair, adequate and reasonable and within the range of possible final approval.

This motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, Approval of Class Notice, and Setting of Final Approval Hearing and the Memorandum of Points and Authorities in Support thereof; the Declarations of Counsel, the Court's record of this action; the Declarations of James Marty Stewart and Mark Bishop; all matters of which the Court may take notice; and such oral or documentary evidence presented at the hearing on the motion.

OLIVIER SCHREIBER & CHAO LLP
QUINTANA HANAFI, LLP

DATE: April 29, 2021

*/s/ Christian Schreiber*
Christian Schreiber
*Attorneys for Plaintiffs*

NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING
CASE NO. 3:20-cv-02780-VC

7354831v.1

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     PROCEDURAL AND FACTUAL BACKGROUND.......................................... 2

III.    THE PROPOSED SETTLEMENT.................................................................... 4

    A.  Class Relief ................................................................................................ 4

    B.  Distribution of Settlement Funds to Class Members ................................. 4

    C.  Any Uncashed Checks Will Be Distributed Cy Pres. ................................. 5

    D.  Opportunity to Object or Opt Out ............................................................. 5

    E.  Released Claims.......................................................................................... 6

    F.  Settlement Administration and Dissemination of Notice to the Class......................... 6

    G.  Payment of Attorneys' Fees, Costs, Service Awards, and LWDA Payment................ 6

IV.     ARGUMENT ...................................................................................................... 7

    A.  Standards for Preliminary Approval .......................................................... 7

    B.  Conditional Certification of the Class is Appropriate................................ 9

        1. The Settlement Class Is Numerous. ...................................................... 9

        2. Common Questions of Law and Fact Predominate. ............................ 10

        3. Plaintiffs' Claims Are Typical of the Class Claims............................. 11

        4. Plaintiffs and Class Counsel Adequately Represent the Class. ........... 12

        5. Class Treatment Is Superior................................................................. 12

    C.  The Settlement Falls Within the Range of Possible Approval. ................. 13

        1. The Proposal Was Negotiated at Arm's Length. ................................. 13

        2. Plaintiffs and the Proposed Class Face Considerable Ongoing Risk in the
           Absence of Settlement. ....................................................................... 16

a. Defendant Raised Several Issues to Dispute Plaintiff's Claims. ............................... 16

b. Defendant Also Disclosed Significant and Ongoing Financial Losses Which Made It Uncertain Whether It Would Be Able to Pay A Judgment. ................................... 19

c. Resolution of the Case Under the Current Terms Is Fair and Reasonable to Class Members and Should Be Approved by the Court. ...................................................... 21

3. The Value of the Settlement, Which Will Be Directly Conferred on Class Members, Is Significant Under the Circumstances, and Treats Class Members Equitably Relative to Each Other. ........................................................................... 22

D. The Proposed Form and Methods of Notice is The Best Notice Practicable and Should be Approved. ......................................................................................... 27

E. This Court's Guidelines Support Granting Preliminary Approval. ........................... 29

F. The Settlement of FLSA Claims is Warranted. .......................................................... 30

G. A Final Approval Hearing Should be Scheduled. ....................................................... 30

V. CONCLUSION ..................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page(s)**

*Acosta v. Frito- Lay, Inc.,*
  2018 WL 2088278 (N.D. Cal. May 4, 2018) ...................................................................14, 22, 23

*Adams v. Inter-Con Security Systems, Inc.,*
  242 F.R.D. 530 (N.D. Cal. 2007) ...........................................................................................9

*Amchem Products Inc. v. Woodward,*
  521 U.S. 591 (1997) ...............................................................................................................13

*Bernstein v. Virgin America, Inc.,*
  2016 WL 6576621 (N.D. Cal. Nov. 7, 2016)........................................................................11

*Betancourt v. Advantage Human Resourcing, Inc.,*
  2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ....................................................................21, 23

*Brock v. City of Cincinnati,*
  236 F.3d 793 (6th Cir. 2001) .................................................................................................17

*Cabiness v. Educational Financial Solutions, LLC,*
  2019 WL 1369929 (N.D. Cal. March 26, 2019) ...............................................................14, 21

*Chao v. Aurora Loan Servs., LLC,*
  2014 WL 4421308 (N.D. Cal. Sept. 5, 2014)....................................................................28, 29

*Ching v. Siemens Indus., Inc.,*
  2014 WL 2926210 (N.D. Cal. June 27, 2014) .....................................................................15

*Chu v. Wells Fargo Invs., LLC,*
  2011 WL 672645 (N.D. Cal. Feb. 16, 2011).......................................................................26

*Chun-Hoon v. McKee Foods, Corp.,*
  716 F. Supp. 2d 848 (N.D. Cal. 2010)..................................................................................21

*Churchill Vill., LLC v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004)..........................................................................................7, 9, 27

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992)................................................................................................7

*Cotter v. Lyft, Inc.,*
  176 F.Supp.3d 930 (N.D. Cal. 2016).....................................................................................25

*Cotter v. Lyft, Inc.,*
193 F.Supp.3d 1030 (N.D. Cal. 2016) ..................................................................25, 26

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
244 F.3d 1152 (9th Cir. 2001) ...................................................................................10

*Destefano v. Zynga, Inc.,*
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............................................................25

*Edwards v. City of Long Beach,*
2011 WL 13180208 (C.D. Cal. Oct. 31, 2011) ..........................................................27

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) .....................................................................................................9

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011) .....................................................................................12

*Garcia v. Gordon Trucking,*
2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ...........................................................26

*Gaudin v. Saxon Mortg. Servs., LLC,*
2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ..........................................................25

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ............................................................................. *passim*

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) .....................................................................................11

*Harris v. Vector Mktg. Corp.,*
2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...........................................................14

*In re Omnivision,*
559 F.Supp. 2d 1042 (N.D. Cal. Jan. 8, 2008) .................................................. *passim*

*In re Pacific Enterprises Securities Litigation,*
47 F.3d 373 (9th Cir. 1995) .......................................................................................15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
148 F.3d 283 (3d Cir. 1998) ......................................................................................27

*In re Tableware Antitrust Litig.,*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................7, 8

*Leever v. Carson City,*
360 F.3d 1014 (9th Cir. 2004) ...................................................................................17

MEMO. PTS & AUTHORITIES ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING
CASE NO. 3:20-cv-02780-VC

iv

*Lilly v. Jamba Juice Co.,*
2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .......................................................................8

*Linner v. Cellular Alaska P'Ship,*
151 F.3d 1234 (9th Cir. 1998) ............................................................................................21

*Lundell v. Dell, Inc.,*
2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ......................................................................29

*Lynn's Food Stores, Inc. v. U.S. Dept. of Lab.,*
679 F.2d 1350 (11th Cir. 1982) ..........................................................................................30

*Ma v. Covidien Holding, Inc.,*
2014 WL 360196 (C.D. Cal. Jan. 31, 2014) .......................................................................24

*Magadia v. Wal-Mart Assocs., Inc.,*
384 F. Supp. 3d 1058 (N.D. Cal. 2019)...............................................................................25

*Mendoza v. Tucson Sch. Dist. No.,*
623 F.2d 1338 (9th Cir. 1980).......................................................................................28, 30

*Miletak v. Allstate Ins. Co., No. C,*
2010 WL 809579 (N.D. Cal. Mar. 5, 2010) .........................................................................9

*Nat'l Rural Telecomm. Corp. v. Directv, Inc.,*
221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................21, 27

*Nen Thio v. Genji, LLC,*
14 F. Supp. 3d 1324 (N.D. Cal. 2014)................................................................................30

*Nordstrom Comm'n Cases,*
186 Cal.App.4th 576 (2010)................................................................................................25

*O'Connor v. Uber Technologies, Inc.,*
201 F. Supp. 3d 1110 (N.D. Cal. 2016)..............................................................................26

*Officers for Justice v. Civil Service Commiss. of the City and Cty. of San Francisco,*
688 F.2d 628 (9th Cir. 1982) ..............................................................................................24

*Ontiveros v. Zamora,*
2014 WL 3057506 (E.D. Cal. July 7, 2014)........................................................................8

*Osegueda v. N. California Inalliance,*
2020 WL 230201 (E.D. Cal. Jan. 15, 2020) ........................................................................7

*Reyes v. Bakery and Confectionary Union and Indus. Int'l. Pension Fund,*
2017 WL 7243239 (N.D. Cal. Jan. 23, 2017) ....................................................................14

*Rieckborn v. Velti PLC,*
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015).................................................................23

*Rodriguez v. Hayes,*
   591 F.3d 1105 (9th Cir. 2010).................................................................................10

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
   944 F.3d 1035 (9th Cir. 2019).............................................................................7, 16

*Rudolph v. Metropolitan Airports Com'n,*
   103 F.3d 677 (8th Cir. 1996)..........................................................................*passim*

*Satchell v. Fed. Express Corp.,*
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007).......................................................14, 16

*Schiller v. David's Bridal, Inc.,*
   2012 WL 2117001 (E.D. Cal. June 11, 2012).............................................................26

*Stewart v. Applied Materials, Inc.,*
   2017 WL 3670711 (N.D. Cal. Aug. 25, 2017)............................................................29

*Stovall-Gusman v. W.W. Granger, Inc.,*
   2015 WL 3776765 (N.D. Cal. June 17, 2015) ...........................................................24

*Thurman v. Bayshore Transit Management, Inc.,*
   203 Cal.App.4th 1112 (2012)..................................................................................25

*Vasquez v. Coast Valley Roofing, Inc.,*
   266 F.R.D. 482 (E.D. Cal. 2010)..............................................................................15

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011) ...............................................................................................10

*Williams v. First Nat'l Bank,*
   216 U.S. 582 (1910) .................................................................................................7

*Wren v. RGIS Inventory Specialists,*
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)..............................................................22

*ZB, N.A. v. Superior Court,*
   8 Cal. 5th 175 (2019)..............................................................................................26

*Zinser v. Accufix Research Institute, Inc.,*
   253 F.3d 1188 (9th Cir. 2001)..................................................................................10

MEMO. PTS & AUTHORITIES ISO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING
CASE NO. 3:20-cv-02780-VC

vi

**Statutes**

29 U.S.C. § 201 ................................................................................................................... 1

29 U.S.C. § 216(b) ............................................................................................................. 30

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 2

Cal. Civ. Code § 203 ...................................................................................................... 5, 23

Cal. Civ. Code § 226 ...................................................................................................... 5, 23

Cal. C.F. Code § 1542 ......................................................................................................... 6

Cal. Lab. Code § 2698 ......................................................................................................... 1

Cal. Lab. Code § 2699 ................................................................................................... 7, 25

Cal. Lab. Code § 2802 ................................................................................................. 11, 23

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................. *passim*

Fed. R. Civ. P. 23(b) ................................................................................................. *passim*

Fed. R. Civ. P. 23(c) ................................................................................................. *passim*

Fed. R. Civ. P. 23(e) ................................................................................................. *passim*

**Regulations**

29 C.F.R. § 785.23 ............................................................................................................ 17

**Other Authorities**

Manual for Complex Litigation § 21.632 (FJC 2004) .......................................................... 7

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   **INTRODUCTION**

This is a hybrid wage and hour class action brought under Fed. R. Civ. Procedure 23 for claims under the California Labor Code, and a collective action brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). Plaintiffs Justin Hidalgo, Courtney Bentley, and Gavin Boomer ("Plaintiffs") are former dog handlers for Defendant Global K9 Protection Group, LLC ("Defendant" or "GK9").

On July 24, the Court conditionally certified the collective action. ECF Dkt. 41. After notice was directed by the Court, the parties participated in multiple settlement conference sessions overseen by the Honorable Laurel Beeler. The Parties now seek preliminary approval of the settlement reached through that process. *See* Declaration of Christian Schreiber ("Schreiber Decl."), Exh. A ("S.A." or the "Settlement").

The proposed Settlement provides for Defendant to pay $425,000 in four installments, to 75 California class and collective members (the "Class") who either opted into the lawsuit or were based in California and subject to the protections of the California Labor Code. Class members allege that Defendant failed to pay them for all hours worked, failed to reimburse them for required expenses, or provide them lawful breaks. The Settlement would resolve the claims of these individuals if Defendant completes the payment schedule following final approval, and would also resolve claims for penalties brought under the Private Attorneys' General Act, Cal. Lab. C. § 2698, *et seq.* ("PAGA").

If Defendant fails to timely make all four payments, Class members get to retain their payments and the release is void. In addition, Class counsel has agreed to defer the bulk of their attorneys' fees to the latter payments to ensure Class members receive priority in the allocation of Settlement proceeds.

The Settlement meets the standard for preliminary approval because it is fair, adequate, and reasonable under the circumstances – though it is also true these circumstances reflect the unfortunate realities of the COVID-19 pandemic on a company whose workforce is largely

dependent upon passenger air travel, as described in the declarations of James Marty Stewart and Mark Bishop.

The Parties seek preliminary approval of the Settlement and an order certifying the settlement Class of California-based handlers, appointing Class Representatives and Class Counsel, appointing a Settlement administrator, directing notice, and setting a final approval hearing.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed this class and collective action on April 21, 2020. ECF Dkt. 1. The operative First Amended Complaint ("FAC") was filed on July 13, 2020 (ECF 33) to add claims under PAGA. The FAC includes claims under the California Labor Code and the FLSA. Plaintiffs also assert claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. C. § 17200, *et seq.* Plaintiffs seek unpaid wages, including overtime, liquidated damages, as well as civil and statutory penalties, injunctive relief, and attorneys' fees and costs.

Plaintiffs and Class members are canine handlers. Together with their canines, they are trained to detect explosives and other hazardous or illegal materials for GK9 clients around the country. Plaintiffs allege that handlers performed the following non-exempt duties, in addition to their screening duties, on a regular basis: (1) training their dogs (often occurring at or around client sites); (2) keeping their dogs healthy by, for example, taking their dogs to regular veterinary visits, feeding them appropriately, walking them regularly outside screening or "sniff time," and ensuring they were adequately secured for vehicle travel; (3) performing various administrative tasks before and after screenings, such as uploading body-cam security footage to GK9's servers, logging their time using GK9's time keeping system, reviewing logs and manifests for cargo to ensure accuracy, completing paperwork for the use of training aides such as explosives, and other routine duties; and (4) travelling from work site to work site within a work day. FAC ¶¶ 19-21.

GK9 was founded in 2018 and is headquartered in Opelika, Alabama. FAC ¶ 13. Plaintiffs allege that GK9 classified Plaintiffs and all similarly situated canine handlers as

exempt from overtime until November 1, 2019. FAC ¶ 19. After this date, GK9 reclassified all handlers as eligible for overtime, though their duties remained the same. *Id.* Plaintiffs allege that GK9 paid handlers a monthly stipend intended to compensate them for their canine care, mileage, and cell phone expenses, which was inadequate to cover their actual costs. FAC ¶ 23.

Pursuant to the Court's standing order, GK9 provided a class list and stipulated to conditional certification of the FLSA collective action. ECF 37. Notice was issued and the opt-in period closed on November 10, 2020. GK9's class list identified 163 putative class members and 45 consented to join after receiving notice. Of these, 32 live outside California.

While the notice of conditional certification was still pending, the case was referred to Magistrate Judge Laurel Beeler for a settlement conference, which occurred on October 1, 2020. ECF Dkt. 70. Judge Beeler oversaw subsequent communications with the parties after the conference, and ultimately, another settlement conference on December 10, 2020. ECF Dkt. 82. The monetary terms of the Settlement were reached in principle after this conference and the parties negotiated the final terms of the Settlement in the ensuing weeks. The Settlement was executed on February 9, 2021. Schreiber Decl., Exh. A.

Plaintiffs propounded 50 Requests for Production of Documents, 10 Requests for Admission, and 14 Interrogatories and Defendant served responses. Defendant provided electronic timekeeping and payroll records for much of the class period, which Plaintiffs had analyzed by an expert prior to the settlement conference. Schreiber Decl. ¶¶ 16-17.

Plaintiffs sought preliminary approval of this Settlement at a hearing on March 18, 2021. The Court denied the proposed settlement without prejudice (ECF Dkt. 95) and instructed the Parties to provide additional information about the relative strengths of Plaintiffs' claims, Defendant's defenses, and the financial issues informing the Settlement. Schreiber Decl. ¶ 3. The Parties have addressed the Court's comments herein, and have submitted the declarations of two individuals with knowledge of Defendant's financial condition. *See* Declaration of James Marty Stewart, Vice President of Finance for GK9

("Stewart Decl.") and Declaration of Mark Bishop, Managing Director of ACP Finance, an investment bank that has worked with GK9 for the past three years ("Bishop Decl.").

## III.    THE PROPOSED SETTLEMENT

The Settlement Class comprises the 43 individuals who reside in California and are members of a California Class covered by Rule 23 and the 32 individuals who opted into the collective action and reside outside California. (In total there are 75 individuals who comprise the Class and all would receive Notice and an opportunity to object or opt out of the Settlement.) Plaintiffs are all California residents who worked for Defendant in California. The Settlement will resolve the claims of these 75 individuals according to the following terms.

### A.  Class Relief

Defendant has agreed to pay $425,000 to resolve the claims of Plaintiffs and the Settlement Class. The Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to all Class Members in settlement of their claims, including Class members' portion of withholdings, contributions, deductions, taxes, fees and any other amounts due to government agencies and/or tax authorities in relation to any payments pursuant to the Agreement; (2) civil penalties paid to the State of California in settlement of the PAGA claims (the "LWDA Payment"); (3) all claims for attorneys' fees and expenses approved by the Court; (4) all costs necessary to administer the Settlement, including payment for the services of the Settlement Administrator; and (5) payment of a service award to Plaintiffs not to exceed $5,000 each, subject to Court approval. *See* Schreiber Decl., Ex. A, S.A. § I. GK9 will separately pay its portion of taxes, contributions, fees and any other amounts owed to government agencies and/or tax authorities in relation to any payments pursuant to the Agreement. S.A. ¶ 19.

### B.  Distribution of Settlement Funds to Class Members

There will be a direct monetary distribution to the 75 Class Members. Class Members will not need to file a claim or do anything affirmative to receive payment. Schreiber Decl. ¶

26. The payments will be made in four consecutive quarters following the Court's final approval of the Settlement. S.A. § IV.J.

The amount paid to all Class Members will be based upon two factors. First, a pro rata share of the Class Member's work weeks in the Class Period. S.A. § IV.J.4. There are 5,155 workweeks worked by Class members during the Class Period (an average of 69 weeks per Class member). Second, California Class members will receive an additional payment of $1,000. *Id.* IV.J.1. This payment reflects the additional claims these Class members have under the California Labor Code, including claims for meal and rest breaks, reimbursement of business expenses, wage statement and waiting time penalties under Labor Code §§ 203 and 226, and their portion of PAGA penalties.

The average recovery per class member is anticipated to be approximately $3,400.

### C.  Any Uncashed Checks Will Be Distributed Cy Pres.

All settlement funds will be paid out, and none will revert to GK9. *Id.*, § I (p. 2). Subject to the Court's approval, after all payments have been issued to the Class Members, any amount remaining in the Settlement Fund from uncashed checks, after reasonable efforts have been made to locate Class Members, will be paid to Legal Aid at Work ("LAAW"), a California-based nonprofit organization that provides legal aid to low-income, working families, including in the area of wage and hour law. *Id.*, § IV.J.5 (p. 20). LAAW's mission of enforcing worker protections through litigation and policy advocacy furthers the interests of California workers in preventing and remedying wage theft and other labor issues. *See* Procedural Guidance § 8.

### D.  Opportunity to Object or Opt Out

Class Members may object to or opt out of the Settlement. *Id.*, § IV.E-F. The Class Notice shall provide instructions and requirements for Class Members to object to the Settlement or to opt out of the Settlement. *Id.*

### E.   Released Claims

The Settlement sets forth the released claims in ¶¶ 4 and 12 for California Class members and Collective members. The claims released are clearly defined and limited to those "claims raised in the operative Complaint and/or through the Settlement Conference. Such claims will be released through February 15, 2021." *See* Procedural Guidance § 1c. The claims raised in the operative Complaint and Settlement Conference are coextensive. Schreiber Decl. ¶ 37. The named Plaintiffs have executed a broader personal release that includes a waiver of unknown claims under Cal. Civ. C. § 1542. S.A. ¶ 24.

### F.   Settlement Administration and Dissemination of Notice to the Class

Plaintiffs seek approval of CPT Group, Inc. ("CPT") as the settlement administrator. CPT has successfully administered a large number of wage and hour class action settlements in an efficient and effective manner. Schreiber Decl., Ex. C. Class Counsel considered three other settlement administrators before recommending CPT, which had the lowest bid. *Id.*

CPT will distribute the Class Notice, maintain a settlement website, and maintain a toll-free telephone number via which Class Members can direct questions about the Settlement, and will administer and distribute all settlement-related payments. See Ex. A, § IV.D.

Notice to Class Members shall be accomplished by email to all Class Members within 30 days of the Court's preliminary approval order. *See* Ex. A, § IV.D. GK9 will furnish necessary information to CPT to effectuate Notice via email, and CPT will mail, and Notice returned as undeliverable, after updating the mailing addresses through the National Change of Address database before mailing (with all returned mail skip-traced and promptly re-mailed). *Id.* CPT also shall establish a website for information about the Settlement. *Id.*

### G.   Payment of Attorneys' Fees, Costs, Service Awards, and LWDA Payment

Plaintiffs will file a motion for an award of attorneys' fees of up to $127,500 (*i.e.*, 30% of the Settlement Fund) for fees, and for reimbursement of reasonable expenses of up to $40,000, inclusive of settlement administration costs, to be paid out of the Settlement Fund. S.A. § IV.J. These amounts for attorneys' fees and costs are reasonable in light of the results

achieved and the work required to bring this matter to resolution. Schreiber Decl. ¶¶ 15-27. Additionally, the Settlement proposes a $5,000 allocation for PAGA penalties, of which $3,750 would be paid to the Labor and Workforce Development Agency pursuant to the 75%/25% split set forth in Lab. C. § 2699(i). Finally, the Settlement provides that Plaintiffs may seek service awards of $5,000 each, subject to the Court's approval. S.A. § IV.J.1.

## IV.   ARGUMENT

### A.  Standards for Preliminary Approval

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlement spares litigants the uncertainty, delay and expense of a trial, and reduces the burden on judicial resources. As a result, "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (noting that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

Even so, class action settlements require court approval. Fed. R. Civ. P. 23(e). Where a class action is settled prior to class certification, courts must employ "a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019); *Osegueda v. N. California Inalliance*, No. 18-CV-00835 WBS EFB, 2020 WL 230201, at *2 (E.D. Cal. Jan. 15, 2020).

There are two stages to the approval of a class action settlement. In the first stage, the parties must show "that the court will likely be able to ... (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632

(FJC 2004). If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to ... (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, "the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class." *Ontiveros v. Zamora*, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014). In the second stage, the court reviews any objections by class members and conducts a final fairness hearing to make a final determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. Rule 23(e).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2015 WL 1248027, at *6 (N.D. Cal. Mar. 18, 2015). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Factors the Court should consider include whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, courts in the Ninth Circuit have also considered the strength of the plaintiffs' case; the extent of discovery completed and the stage of the proceedings; the

experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Based on these standards and for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

### B.   Conditional Certification of the Class is Appropriate.

Plaintiffs seek conditional certification of the following Settlement Class:

> All individuals employed by Defendant as canine handlers ("handlers") at any time between April 21, 2016 through February 15, 2021 who either (1) worked for Defendant in California or (2) worked for Defendant outside of California and opted into the collective action.

The Court has already granted conditional certification of a collective under the FLSA. ECF Dkt. 41. Though conditional certification under the FLSA is a "lenient standard," 242 F.R.D. 530, 536 (N.D. Cal. 2007), the Settlement Class also satisfies the requirements of Rule 23(a), namely, (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Hanlon*, 150 F.3d at 1019. It also satisfies Rule 23(b)(3) in that common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining the propriety of class certification, a court may not delve into the underlying merits of the claims. The fundamental question "is not whether... plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Settlement Class meets each of these criteria.

#### 1.   The Settlement Class Is Numerous.

The proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement. "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2010 WL 809579, at *10 (N.D. Cal. Mar. 5, 2010) (citation omitted). Here, there are 75

Class Members in total, of whom 43 are part of the group of California handlers. S.A., Exhs. A-B. The numerosity requirement is thus satisfied.

### 2.  Common Questions of Law and Fact Predominate.

The commonality inquiry under Rule 23(a)(2) and the predominance inquiry under Rule 23(b)(3) overlap and are thus examined together here. Rule 23(a)(2) is satisfied when there is a "common contention... of such a nature that it is capable of classwide resolution-- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Hayes*, 591 F.3d 1105, 1112 (9th Cir. 2010). The predominance inquiry under Rule 23(b)(3) focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001). "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted).

Here, common questions of fact and law exist that predominate over individual issues. The central questions presented in this case center around Defendant's classification of handlers as exempt from overtime (prior to November 2019), and Defendant's ongoing failure to pay Class members for all time worked before and after the change in their classification. Whether Plaintiffs and other GK9 handlers have been deprived of their full wages for all hours worked is the common and predominant question for all handlers, whether it was due to their misclassification or Defendant's policy and practice of not counting all time worked. Plaintiffs,

who worked before and after the re-classification, have the same claims as those of the proposed Class and will be resolved in the same way. All handlers are subject to the same policies, practices and procedures with respect to pay, and all are alleged to have suffered the same type of wage loss, i.e., unpaid wages for the period when they were misclassified as overtime exempt or otherwise worked off the clock. California-based Class members also have claims for the Defendant's failure to provide lawful meal and rest periods, reimbursement of business expenses under Lab. C. § 2802, and statutory penalties. FAC ¶¶ 58-63.

GK9's defenses are common and predominant as well. It offers common defenses to Plaintiffs' claims that run to the proposed Class as a whole. ECF Dkt. 27. There are no claims or defenses individual to Plaintiffs that would predominate over common questions of fact and law. Commonality and predominance are thus satisfied here. *See, e.g., Bernstein v. Virgin America, Inc.*, No. 15-CV-02277-JST, 2016 WL 6576621, at *13 (N.D. Cal. Nov. 7, 2016) (predominance satisfied where pay policies run to class as a whole).

### 3. Plaintiffs' Claims Are Typical of the Class Claims.

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

Here, Plaintiffs' claims are typical of all other Class Members. Plaintiffs were canine handler employees of GK9 seeking to represent a Class of former and current handlers who have all been subject to the same pay policies and procedures of Defendant. Plaintiffs worked as overtime exempt, and worked off the clock after they became eligible for overtime. Plaintiffs assert the same legal claims on behalf of themselves and the proposed Settlement Class and seek to recover damages as a result of Defendant's common course of conduct. Plaintiffs' claims therefore are "typical" within the meaning of Rule 23(a). *See, e.g., Bernstein*, 2016 WL 6576621, at *14-15.

### 4.   Plaintiffs and Class Counsel Adequately Represent the Class.

A representative plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs have provided fair and adequate representation for the Settlement Class. They have no interests whch are in conflict with other Class Members, have experienced the same alleged legal violations, and have vigorously prosecuted the class claims. Schreiber Decl. ¶ 38.

Class Counsel have considerable experience in litigation complex class actions, including wage and hour class actions, are familiar with the legal and factual issues involved, and are highly qualified. Schreiber Decl. ¶¶ 11-14; Declaration of Ramsey Hanafi ("Hanafi Decl.") ¶ 4. The work performed by Plaintiffs' counsel in this matter, as well as their substantial experience, provides more than ample basis for finding that they are well qualified to serve as Class Counsel. *Id.* The adequacy requirement thus is satisfied.

### 5.   Class Treatment Is Superior.

Rule 23(b)(3) further requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." In deciding whether to certify a class for settlement purposes, a court considers the following factors to determine superiority: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)-

(C).[1] Superiority is to be assessed through a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon,* 150 F.3d at 1023.

Here, the class action is superior to any other available method for litigating class members' claims against GK9. As in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. Class certification is particularly appropriate since resolving class members' claims *en masse* will ensure an efficient and fair distribution of the settlement fund. Individual claims would "prove uneconomic for a potential plaintiff," because "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. The Class Members' interest in individual litigation is therefore low and concentration of litigation is particularly desirable. There is no pending litigation of these claims by any Class Member. Finally, any Class Member who wants to pursue a separate action can opt out of the Settlement. For these reasons, class treatment is the superior means of resolution.

### C.  The Settlement Falls Within the Range of Possible Approval.

All relevant factors weigh in favor of preliminary approval of the proposed settlement as fair, adequate, and reasonable.

#### 1.  The Proposal Was Negotiated at Arm's Length.

The Settlement represents the culmination of intensive arm's-length negotiations, after considerable litigation efforts, with the assistance of Magistrate Judge Laurel Beeler, who presided over multiple settlement conferences. Schreiber Decl. ¶¶ 16-23. Plaintiffs and the interests of the Class were represented in settlement negotiations by attorneys who have considerable experience in wage and hour litigation, and who are, therefore, well-versed in the legal and factual issues. Schreiber Decl. ¶¶ 11-14, 16. GK9 was similarly represented by counsel with extensive experience defending complex litigation, including wage and hour class

---

[1] Courts do *not* consider the fourth factor, i.e., the difficulties of managing a class action, in the context of settlement. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems").

actions. The settlement negotiations were contested and conducted in good faith. Schreiber Decl. ¶¶ 16-24.

The participation of a Court-appointed neutral in this case is strong assurance that the Settlement is the result of arm's-length negotiations. *See Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's length bargaining."); *see also Satchell v. Fed. Express Corp.*, No 03-cv-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Furthermore, the Settlement, consummated after settlement conferences with Judge Beeler and continued arm's-length negotiations, is a fair agreement for the benefit of Class Members. *See Reyes v. Bakery and Confectionary Union and Indus. Int'l. Pension Fund*, No. 14-cv-05596-JST, 2017 WL 7243239, at *5 (N.D. Cal. Jan. 23, 2017) (finding settlement non-collusive when parties met before a neutral mediator).

Further, Class Counsel and Defense Counsel support the settlement agreement. *See In re Omnivision*, 559 F.Supp. 2d at 1043 (holding "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness"). Counsel for both Plaintiffs and Defendant have extensive experience litigating wage and hour class actions, and their knowledge regarding the merits of the case is strong considering the discovery conducted and the number of issues contested in this case. Furthermore, Class Counsel has litigated a number of class action cases, including actions such as this one presenting questions of misclassification. Schreiber Decl. ¶¶ 11-14; *see Cabiness*, 2019 WL 1369929, at *6 ("Class Counsel have extensive experience litigating class action and consumer protection cases. That they advocate in favor of the settlement weighs in favor of approval."); *see also Acosta*, 2018 WL 2088278, at *9 (giving value to opinion of counsel who had been named class counsel in multiple class actions).

Moreover, Class Counsel have either settled or tried and brought to judgment major wage and hour and other class action cases and understand the possibilities of recoveries and risks associated with such extensive proceedings. Schreiber Decl. ¶ 14. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific. Enterprises Securities. Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel consider this Settlement to have been achieved under extraordinary circumstances for maximum value and with significant protections to the rights of Class members. Schreiber Decl. ¶¶ 20, 24, 26, 39.

In addition, neither Plaintiffs nor their counsel have any conflicts or interests that are antagonistic to the Class. Class Counsel have investigated the action, reviewed discovery, worked with experts, and negotiated the Settlement with the assistance of Judge Beeler and through subsequent direct negotiations. Schreiber Decl. ¶¶ 16-19, 23.

Counsel will seek attorneys' fees of up to $127,500, or 30% of the common fund, plus reasonable expenses advanced and carried by Class Counsel during this litigation, which is well within the range for attorneys' fees in these types of cases. *See, e.g.*, *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (finding "the request for attorneys' fees in the amount of 30% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark"). Class Counsel are also deferring the bulk of their fee recovery to the end of the settlement term. S.A. § IV.J.4. After recovering costs incurred to date as part of the first payment, the method of distribution benefits the Class both by division between attorneys' fees (one-third) and Class recovery (two-thirds) and the timing of the balance of the fee award payment (which is reserved until the fourth and final payment). Class counsel's intent was to ensure the Class received the bulk of their share of the Settlement as quickly as possible. Schreiber Decl. ¶ 26.

Additionally, Class Counsel will request a service award for Plaintiffs of $5,000 each, subject to Court approval. Schreiber Decl. ¶ 38.

There is no "clear sailing" provision in the settlement agreement (whereby the defendant will not object to a certain fee request by class counsel), and none of the funds will revert to GK9. *See Roes*, 944 F.3d at 1049. Moreover, the bulk of the Parties' negotiations occurred during a settlement conference presided over by Judge Beeler. *See Satchell*, 2007 WL 1114010, at *4 ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The Settlement thus is the product of an adversarial and careful negotiation with the assistance of a well-respected and experienced neutral, Plaintiffs with a proven commitment to the Class, and experienced and skilled class action counsel.

### 2. Plaintiffs and the Proposed Class Face Considerable Ongoing Risk in the Absence of Settlement.

Because liability is highly contested, both sides will face significant time, expenses, and risk if this Action continues. As set forth below, GK9 denies Plaintiffs' allegations, individually and on behalf of the putative class asserted in the Complaint, and further denies any and all liability to anyone, including, but not limited to, Plaintiffs, the Settlement Class, or any Settlement Class Member, based upon, arising out of, relating to, or otherwise in connection with the allegations asserted in the Complaint. GK9 maintains that it complied with all applicable wage laws and further asserts it has strong legal defenses, such as preemption, that would wipe out all potential liability.

While Plaintiffs and Class Counsel believe Plaintiffs would ultimately succeed in obtaining certification of the proposed Class and in prevailing on the merits at trial, the litigation in this action to date has informed the Parties of the risks of continued litigation.

### a. Defendant Raised Several Issues to Dispute Plaintiff's Claims.

In response to Plaintiffs' claims, Defendant has raised several defenses. With regard to the initial misclassification of Handlers, Defendant notes that the misclassification lasted only

about 11 months and was rectified starting November 1, 2019. It contends that no (or very little) overtime would have been worked during those 11 months because, as a start-up company, Handlers were not scheduled to work full 40 hour workweeks and many did not work full 8 hour days during that time period. And for those Handlers who worked more than 93 hours during a semi-monthly period, Defendant contends that it paid Handlers additional "incentive pay." Defendant further contends that, in 2020, while its business dropped significantly due to the pandemic and airport business drop off, it over paid Handlers for hours not worked. Defendant contends that because it is costly to train Handlers, it wanted to keep them from leaving for competitors and, as a result, it paid its Handlers for full-time work even though Handlers were not working full-time shifts for much of 2020. In other words, according to Defendant, Handlers were significantly over compensated and Defendant would be entitled to an offset for its overpayments.

In response to Plaintiffs' contention that Handlers were not adequately compensated for taking care of the dogs during off-hours, Defendant contends that 30 minutes per day of additional time were paid to Handlers for taking care of the dogs. The parties dispute whether 30 minutes per day was adequate compensation. In response, Defendant contends as follows:

> There is no direct guidance under the California statutes, so the Parties should look to precedent interpreting the FLSA for all of the relevant claims in resolving to what extent off-duty canine care is "work." *See* 29 C.F.R. § 785.23. The Ninth Circuit has articulated a fairly straightforward standard for canine care stipends: "[A]n agreement must take into account some approximation of the number of hours actually worked by the employee or that the employee could reasonably be required to work." *Leever v. Carson City*, 360 F.3d 1014, 1019 (9th Cir. 2004) (finding that one hour of pay per week "was not reasonable as a matter of law, as it failed to account for hours that were actually or reasonably should have been worked"). *See also Brock v. City of Cincinnati*, 236 F.3d 793, 807 (6th Cir. 2001) (finding a payment of 17 minutes per day reasonable when offered in good faith and agreed to "with eyes wide open"); *Rudolph v. Metropolitan Airports Com'n*, 103 F.3d 677, 684 (8th Cir. 1996) (finding one-half hour per day reasonable).

> Defendant's core business is providing canine protective and security services. Defendant did not arbitrarily decide the necessary time to provide adequate daily canine care. Handlers must feed their dogs, take them outside, and give them a short walk every day—tasks that can reasonably be completed within

30 minutes. To be clear, the dogs are not pets and they are not to be treated as pets. They are highly trained working animals that are either working or they are at rest. Based on Defendant's experience with these working dogs, Handlers *do* complete these tasks within 30 minutes. If Handlers have had undisclosed challenges in doing so, "[i]t is not enough for plaintiffs to show that they worked more than agreed. They must show that the agreement provided an unreasonably short amount of time to perform the assigned tasks." *Rudolph*, 103 F.3d at 684 (internal citations omitted). Because the dogs are not pets, Handlers are specifically instructed to not take them out for extended periods of play or other activities given the dogs' strict training. If Handlers choose to spend that additional time on activities with their dogs, that time does not become compensable work. *See Id.* ("Any time beyond the half-hour plaintiffs spent with their canine charges we presume stemmed from their personal devotion to the dogs, and was, therefore, not 'predominantly for the benefit of the employer,' . . . as it must be in order to constitute 'work' within the statute's meaning.").

With regard to missed meal and rest breaks, Defendant responded that, under TSA Guidelines, each canine was required to receive hour-long breaks for <u>every two hours of work</u>. And during those breaks, Defendant contends that Handlers were not required to perform any work with the canine. Instead, according to Defendant, the canines were to be crated and rested. Defendant also noted that its policies emphasize that non-exempt employees should take and properly record meal breaks. Thus, according to Defendant, it fulfilled its obligation to *provide* Handlers with more than enough time for meal and rest breaks.

In response to Plaintiffs' claims of unreimbursed expenses, Defendant contends that prior to January 1, 2020, Handlers were paid $420 per month as a regular canine care stipend, in addition to veterinary expenses for on-the-job injuries. Defendant contends that this stipend exceeded actual costs of care. On January 1, 2020, Defendant contends that it allowed Handlers to elect to receive either a stipend of $370 per month with the ability to receive reimbursements for any actual expenses over $370, or a reimbursement for actual expenses. According to Defendant, all Handlers opted to receive the $370 stipend option with the ability to receive reimbursements for any actual expenses over $370.

Finally, Defendant contends that even if the individual Plaintiffs may be able to establish some validity of their own personal claims, their experiences are not representative, common, or the same as other Handlers throughout the country. Defendant argues that it would

be able to defeat class certification by demonstrating significant differences between Handlers and how they were compensated, how they were reimbursed, and how they were treated.

To be clear, Plaintiffs do not agree or share Defendant's views of the claims in this case but they do acknowledge that Defendant's contentions raise several issues that make a successful litigation of all claims risky and not certain.

### b. Defendant Also Disclosed Significant and Ongoing Financial Losses Which Made It Uncertain Whether It Would Be Able to Pay A Judgment.

In addition to the risks outlined above regarding the merits of Plaintiffs' claims, there also is a significant issue of whether Plaintiffs' would ever recover any amount from Defendant if litigation continues. Specifically, Plaintiffs learned during this litigation and through the Parties' settlement conferences the extent to which Defendant's business had been impacted by the COVID-19 pandemic. Bishop Decl. ¶ 5. At the conference with Judge Beeler, Defendant shared the company's consolidated financial statements, profit and loss statements, and projections for future revenue. Schreiber Decl. ¶ 19. Plaintiffs also had this information reviewed by an expert at a well-regarded accounting firm in order to obtain an independent review of the information provided by GK9. *Id.* After additional follow up with the company regarding updated projections, Class Counsel determined that further litigation would likely create risks sufficient to imperil the Class' opportunity to achieve a monetary settlement of any amount. *Id.*, ¶ 20; Stewart Decl. ¶ 5; Bishop Decl. ¶¶ 5-8.

At the March 18, 2021 hearing on the Parties' first attempt to seek preliminary approval of the settlement, the Court expressed its concern that Defendant was in a position to possibly "bounce back" to profitability in the coming year. In response, Defendant has noted through its financial records that during its short existence since 2018, it has never actually been profitable. Every year of its existence it has actually lost money – *i.e.,* it lost $9 million during its first full year in 2019, it lost another $7 million in 2020, and its financial prospects for 2020 continue to be uncertain as it seeks additional investors. Stewart Decl. ¶ 3. In other words,

Defendant notes that there can be no "bouncing back" because that assumes it made money at one point, something which has never occurred. Stewart Decl. ¶¶ 3-4.

With regard to seeking investors, Defendant has provided a declaration from its investment banker, Mr. Bishop, who testifies:

> [Defendant] is currently in violation of several of its covenants of its senior secured debt facility and the addition of incremental liabilities will trigger further covenant breaches, potentially leading to a restructuring or potentially even the need to file Chapter 11 to reorganize its liabilities.

> We are currently in discussions with a number of potential equity investors, both from strategic sources and from dedicated private equity vehicles to provide equity for the purposes stated above. A key issue is that any substantive overhang from additional liabilities, particularly if left undefined or uncapped, will likely forestall the possibility of any new capital flowing into the firm. The reason for this is clear in that private equity investors want capital cycled into productive growth oriented purposes or secondarily, to reduce leverage rations on its balance sheet, not to pay off large legal liabilities from third parties.

> We have made representations to both the existing senior lender and to the target private equity investors/strategic investors that the pending litigation against the Company can be fully resolved under the terms of the proposed Settlement Agreement however, in absence of a formal settlement that clearly delineates/caps this liability at a known or fixed dollar level, it will in our view be effectively impossible to complete any form of capital raise for the Company.

Bishop Decl. ¶¶ 6-8. In other words, according to Bishop, there is a real potential of Defendant declaring bankruptcy if it does not receive investor funding, which would leave Class Members with no recovery at all and no employment. Also, according to Bishop, the prospect of Defendant receiving investor funding in 2021 depends immediately on resolving this lawsuit soon, otherwise it will be "effectively impossible to complete any form of capital raise for the Company." *Id.* ¶ 8.

The Class essentially faces a Hobson's choice: proceed with litigation to try and obtain more money, but that will likely bankrupt the company and result in nothing, or take the maximum amount of money the company can afford to pay, despite the amount resulting in a

considerable discount on the Class' maximum recovery. In Class Counsel's opinion, the latter choice is the best option.

### c. Resolution of the Case Under the Current Terms Is Fair and Reasonable to Class Members and Should Be Approved by the Court.

Class counsel arrived at this settlement after considered deliberation. Class counsel engaged in substantive and necessary class discovery related to liability and damages, which made it possible to participate in meaningful and informed settlement negotiations. Plaintiffs received classwide timekeeping data, as well as policies and procedures documents that applied to the Class. The Parties thus "have sufficient information to make an informed decision about settlement." *Linner v. Cellular Alaska P'Ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also Cabiness v. Educ. Fin. Solutions, LLC*, No. 16-cv-01109-JST, 2019 WL 1369929, at *5 (N.D. Cal. Mar. 26, 2019) (finding "the extent of discovery completed supports approval of a proposed settlement, especially when litigation has 'proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases'") (citing *Chun-Hoon v. McKee Foods, Corp*., 716 F. Supp. 2d 848, 851-52 (N.D. Cal. 2010)).

Other customary risks are also present. Class Counsel recognize that GK9 has raised factual and legal defenses in the action that present a risk that Plaintiffs may not prevail, that a class might not be certified for trial, and that the claims of one or more class members may be defeated. Moreover, even if the Court entered judgment in Plaintiffs' favor, there is significant uncertainty whether Defendant would even exist to pay a judgment and any judgment could be overturned on appeal. Plaintiffs and Class Counsel have taken into account the uncertainty and risks inherent in any litigation, especially in complex class action litigation.

"[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Corp. v. Directv, Inc.*, 221 F.RD. 523, 527 (C.D. Cal. 2004). The outcome of this action, should it proceed to further motion practice and/or trial, is by no means certain. In addition, even upon judgment, post-trial motions and an appeal would be likely. *See Betancourt v. Advantage*

*Human Resourcing, Inc.*, No. 14-cv-01788-JST, 2016 WL 344532, at *4 (N.D. Cal. Jan. 28, 2016). Even though the Parties were prepared to go to trial, considering the reality of a likely appeal, "it could be years before Plaintiffs see a dollar." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1042. *See also Wren v. RGIS Inventory Specialists*, C–06–05778 JCS, 2011 WL 1230826, at *7 (N.D. Cal. Apr. 1, 2011) (finding that the risk, expense, complexity, and duration of further litigation point in favor of approving a settlement even though plaintiffs' claims had survived summary judgment).

The Parties' informed decision-making and negotiation, in light of the risks known from initial discovery and litigation, favor approval of the Settlement. *See Acosta v. Frito-Lay, Inc.*, 2018 WL 2088278, at *9 (N.D. Cal. May 4, 2018) (favoring approval of a settlement where the parties "participated in several rounds of discovery production and two rounds of mediation").

### 3. The Value of the Settlement, Which Will Be Directly Conferred on Class Members, Is Significant Under the Circumstances, and Treats Class Members Equitably Relative to Each Other.

The Settlement provides a monetary recovery for the Class that is fair and reasonable even in the face of disputed claims and genuine collectability concerns.

First, the average settlement distribution to the approximately 75 class members will exceed $3,400, and will be distributed to Class Members directly, without a claims process. Class Members who do not opt out will receive checks directly from the Settlement Administrator. *Id.* Class Members will thus readily and easily receive the benefits of the Settlement. In order to accommodate Defendant's financial condition, the Settlement payments will be made in four, quarterly installments of $50,000, $75,000, $150,000, and $150,000. S.A. § IV.J. This structure is intended to maximize GK9's ability to remain stable through the pandemic and strengthen its financial footing over time.

Second, the proposed distribution plan is straightforward and fair to all Class Members. Plaintiffs have received detailed information from GK9 as to Class Members' employment

data. Individual settlement payments will be determined in two ways. The Settlement allocates a share of the net settlement fund by using the Class Members' pro rata share of Class members' total workweeks during the relevant time period. *Id.* There are 5,155 workweeks among Class members during the Class Period. Thus, a Class member who worked 52 workweeks would have a prorated payment of approximately 1% (5,155/52 = .99%).

In addition to this prorated share, California Class members will receive an additional flat payment of $1,000 on top of their prorated workweek share. This payment reflects the significant additional claims of the 43 California handlers and the additional rights afforded those Class members under the Labor Code, including meal and rest period premiums, reimbursement under Labor Code § 2802, wage statement penalties under Labor Code § 226, and waiting time penalties under Labor Code § 203. In addition, California handlers are eligible to receive payments for 25% of any PAGA penalties recovered. Given both the strength and breadth of the claims available to California handlers as compared to the overtime and minimum wage claims available to the non-California handlers, the additional payment is equitable, easy to understand, and simple to administer.

The Settlement thus treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e). "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citing *In re Omnivision Techs., Inc.*, 559 F.Supp. 2d 1036, 1045 (N.D. Cal. 2008)).

Third, the Settlement represents a reasonable compromise of claims in comparison to the potential full value of such claims and the risk of recovering nothing. The Settlement Amount is $425,000, which is an acceptable recompense to Class Members even without the extraordinary circumstances found here.

In evaluating the amount of a settlement, "the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." *Betancourt*, 2016 WL 344532, at *5. However, "'[i]t is well-settled law

that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.' Plaintiff has agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing." *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d at 1042 (citing *Officers for Justice*, 688 F.2d at 628).

For example, Plaintiffs' unpaid wages claim arises out of GK9's misclassification of handlers as exempt from overtime. Based on Plaintiffs' experience, interviews with dozens of class members, and Defendant's policies and procedures, Plaintiffs estimate that, on average, handlers routinely missed meal and rest periods, and worked daily and weekly overtime. Using estimates provided by Plaintiffs and Class members, GK9's records regarding dates of employment, and the handlers' hourly rate of pay as reflected on their wage statements, Plaintiffs estimated that GK9 liability for all handlers (not just the 75 Settlement Class members) through July 2020 was $2,586,183.91 – prior to the imposition of liquidated damages and interest.

These damages are based on the valuation of claims through July 2020 as follows:

- Overtime (including double time): $2,158,502.43
- Meal/rest premiums: $241,256.67
- Wage statement penalties: $67,400.00
- Waiting time penalties: $119,024.81

Schreiber Decl. ¶ 34.

Thus, the total potential recovery for the unpaid wages through July 2020 was $2,586,183.91 – prior to the imposition of liquidated damages and interest. The settlement value of $425,000 is thus 16% of the damages set forth above. Even lesser amounts have been found to be reasonable in other approved wage and hour class settlements. *See, e.g., Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval in wage and hour action where total settlement amount represented approximately 10% of potential value, and net settlement amount represented 7.3% of valuation); *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161- DOC, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (granting preliminary approval of wage and hour settlement for

9.1% as within "range of reasonableness"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (approving class settlement providing settlement fund of "14 percent of likely recoverable aggregate damages at trial," and "9.5 percent of those" damages after "deductions for attorneys' fees and costs and administration costs"); *Gaudin v. Saxon Mortg. Servs., LLC,* No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (approving class settlement providing "13.6% recovery of the maximum possible recoverable damages").

PAGA violations significantly increase Defendant's exposure. There were 717 PAGA pay periods in the data provided by Defendant. While GK9 was in a period of rapid growth between its inception in 2018 and July 2020, the company employed an average of approximately 40 employees per week. If the Court applied a $100 penalty for each pay period during that time period, it would add an additional $71,700. However, courts have broad discretion to reduce penalty amounts under PAGA. *See* Cal. Lab. Code § 2699(e)(2). Courts typically reduce PAGA penalties where there is unsettled law during the pendency of the litigation, where the case presents a matter of first impression that the court had to rule upon, or where an employer demonstrates a serious attempt to comply with the law. *See Thurman v. Bayshore Transit Management, Inc.,* 203 Cal. App. 4th 1112 (2012); *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1099 (N.D. Cal. 2019); *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 941 (noting that court would likely substantially reduce PAGA penalties based on a good faith attempt to comply and the uncertain state of the law). Courts have also used Cal. Lab. Code § 2699(e)(2) as a basis for approving class action/PAGA settlements, where only a fraction of the settlement was allocated toward PAGA. *See Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (settlement approved where $0 out of nearly $9 million settlement allocated to PAGA penalties); *Cotter v. Lyft, Inc*., 193 F.Supp.3d 1030, 1037 (approving allocation of $1,000,000 to PAGA claims out of $27,000,000 settlement).

Additionally, in the settlement context where there is a compromise of claims, it is prudent to permit higher compromise of the PAGA penalties to permit Class Members to

receive the maximum value of the settlement in the form of wage reimbursement. *See, e.g, ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 196–97 (2019) (PAGA promotes the Labor Code's broad remedial purpose of protecting workers by increasing civil penalties while preserving and enhancing workers' rights to recover for lost wages); *O'Connor v. Uber Technologies, Inc.,* 201 F.Supp.3d 1110, 1134 (N.D. Cal. 2016) (courts may apply a "sliding scale" when reviewing PAGA penalties). Given the dollar value of the settlement in this case, , a significant reduction in PAGA penalties is warranted in an effort to steer maximum value to the Class members themselves.

Other courts have dramatically reduced the PAGA penalty per pay period. *See, e.g., Cotter*, 193 F.Supp.3d at 1037; *Garcia v. Gordon Trucking,* 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving the amount of $10,000 out of $3.7 million toward settlement of PAGA claims); *Schiller v. David's Bridal, Inc.,* 2012 WL 2117001, at *14 (E.D. Cal. June 11, 2012) (approving the amount of $7,500 out of $518,245 toward settlement of PAGA claims); *Chu v. Wells Fargo Invs., LLC,* 2011 WL 672645, at *2–3 (N.D. Cal. Feb. 16, 2011) (approving the amount of $10,000 out of $6.9 million toward settlement of PAGA claims).

In addition to the equitable defenses GK9 would raise as to PAGA, Defendant also had significant defenses to Plaintiff's unreimbursed expenses claim under Labor Code section 2802, on the basis of the company's policy of paying a stipend for animal care throughout the Class Period. While the reasonable settlement value of claims is normally subject to discounts associated with litigation risks, here the risk assessment was driven less by litigation risk assessments and more by the company's financials. Class Counsel weighed the discount against GK9's representations regarding the litigation and its impact on ongoing operations. Schreiber Decl. ¶ 20. As such, the Settlement achieved here – approximately 16% of the Class' unpaid overtime, meal and rest, and penalty claims, Class Counsel believes the discount is reasonable.

In light of the foregoing, the Settlement, considering the uncertainty of trial and the difficulty of attaining not just maximum recovery, but *any* recovery whatsoever, favors

approval of the Settlement. *See Edwards v. City of Long Beach*, 2011 WL 13180208, at *3, n. 5 (C.D. Cal. Oct. 31, 2011) ("[t]he reasonableness of a settlement is not dependent upon it approaching the potential recovery plaintiffs might receive if successful at trial"); *Nat'l Rural Telecomm. Corp.*, 221 F.RD. at 527 ("a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). A certain – and substantial – result for Class Members now, rather than a possibly larger, but highly risky one at some indefinite time years in the future, favors preliminary approval of the Settlement.

### D. The Proposed Form and Methods of Notice is The Best Notice Practicable and Should be Approved.

Plaintiffs also seek this Court's approval of the proposed notice to the Class and of the notice procedures. Rule 23(c)(2) provides that Class Members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2). Similarly, Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]." Fed. R. Civ. P. 23(e)(1). "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the Fifth Amendment." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

To satisfy Rule 23(c)(2), the Notice must state "in plain, easily understood language," information about "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)." Fed. R. Civ. P. 23(c)(2). In addition, notice of a proposed settlement must inform Class Members about the Settlement's general terms, that the Class Members can seek complete information from the Court files, and that any Class Member may appear and be heard at a final approval hearing. *See Churchill*

*Vill.*, 361 F.3d at 575 (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980)).

The proposed Notice meets these requirements. Schreiber Decl., Exh. B. The proposed email and website notice is written in plain English and describes: (1) the nature of the claims in the case; (2) a description of the Settlement Class; (3) a description of the Settlement and the relief to be provided; (4) the consequences of opting out or remaining in the Class; and (5) how to get more information from this Court about the Settlement, the parties involved and the procedures to follow to object or opt out. *Id.* The Notice includes the deadline to object to the Settlement, explains that an objection may be performed in person if the objector demonstrates "good cause" for failing to file a timely written objection, and provides the date of the Fairness Hearing along with Zoom login information. *Id.* The Notice states that Class Members can enter an appearance through counsel if desired. *Id.* Finally, the Notice makes clear that Class Members do not need to do anything to receive benefits under the Settlement. *Id.* Accordingly, the contents of the Notice meet all requirements and fully apprises Class Members about their options. *See Chao v. Aurora Loan Servs., LLC*, 2014 WL 4421308, at *6 (N.D. Cal. Sept. 5, 2014) (approving notice which "describes the nature of the action, summarizes the terms of the settlement, identifies the different classes and provides instruction on how to opt out and object, and the proposed fees and expenses to be paid to Plaintiffs' counsel and the claims administrator").

In addition, the proposed Notice also includes: (1) Class Counsel's contact information; (2) the URL for the settlement website; (3) instructions on how to access the case docket via PACER or in person; (4) the date of the final approval hearing and a statement that the date may change without further notice; and (5) a statement advising Class Members that changes to the date or time for the final fairness hearing will be posted to the settlement website. *See* N.D. Cal. Procedural Guidance § 3.

The proposed notice plan also complies with the federal rules and due process and maximizes the opportunity for Class Members to understand the nature of the Class, the

Settlement, and to respond appropriately if they so choose. Under the Settlement Agreement, CPT Group, Inc., an experienced class action administrator with a proven track record in administering class settlements, will serve as the Settlement Administrator. Schreiber Decl., Exh. C. Under the Settlement Agreement, CPT will send direct notice by email and email to members of the Settlement Class. S.A. § IV.K. As Class Members communicated using electronic means (email and text) with GK9, electronic Notice is consistent with their experience at work and the most effective form of Notice and was also the method used for conditional certification notice. Should the administrator experience any problems with emails, the Administrator will then mail Notice by first class mail after an address search. *Id.* Class members will have 30 days to opt out or to object to the settlement. S.A. § IV.E.

Notice plans such as the one proposed here are commonly used in class action settlements like this one and constitute valid, due and sufficient notice to class members, satisfying both Rule 23(c)(2)(B)'s "best notice practicable" standard and Rule 23(e)(1)'s "notice in a reasonable manner" standard. *See, e.g.*, Moore's Federal Practice - Civil § 23.102[3][a]-[c]; *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *4-*5 (N.D. Cal. Aug. 25, 2017) (finding that notice provided by email and first class mail was sufficient for purposes of preliminary and final approval) (citing *Lundell v. Dell, Inc.*, Case No. 05–3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006)) (holding that notice sent via email and first class mail constituted the "best practicable notice" and satisfied due process requirements). The parties therefore respectfully move this Court to approve the proposed form and manner of Notice to the Settlement Class.

### E.  This Court's Guidelines Support Granting Preliminary Approval.

The parties have reviewed this Court's Procedural Guidance for Class Action Settlements (http://cand.uscourts.gov/ClassActionSettlementGuidance). All pertinent information listed in the guidelines has been addressed and complied with by the parties and is addressed herein.

### F.  The Settlement of FLSA Claims is Warranted.

The FLSA provides that "any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be compromised where a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. section 216(b). *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333–34 (N.D. Cal. 2014). If the settlement of an FLSA suit reflects a "fair and reasonable resolution of a bona fide dispute" of the claims raised, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354-55, citing *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dept. of Lab., Empl. Standards Admin., Wage and Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982). For all of the foregoing reasons, this settlement is a fair and reasonable compromise and should be approved.

### G.  A Final Approval Hearing Should be Scheduled.

If the Court grants preliminary approval, a date for the final fairness hearing needs to be set and included in the class notice. The parties request that the Court adopt the schedule contained on the Proposed Order, filed herewith, for purposes of effectuating the various steps in the settlement approval process.

## V.  CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court: (1) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23(c) and (e) and section 216(b) of the FLSA and applicable state laws; (2) preliminarily certify the proposed settlement class; (3) approve the proposed class notice and forms; (4) appoint class representatives, class counsel, and a settlement administrator; and (5) schedule a final approval hearing.

Respectfully submitted,


OLIVIER SCHREIBER & CHAO LLP
QUINTANA HANAFI, LLP

DATE: April 29, 2021          */s/ Christian Schreiber*
                              Christian Schreiber

                              *Attorneys for Plaintiffs*