Monique Olivier (Cal. Bar No. 190385)
monique@osclegal.com
Christian Schreiber (Cal. Bar No. 245597)
christian@osclegal.com
OLIVIER SCHREIBER & CHAO LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 484-0980
Facsimile: (415) 658-7758

Rory Quintana (Cal. Bar No 258747)
rory@qhplaw.com
Ramsey Hanafi (Cal. Bar No. 262515)
ramsey@qhplaw.com
QUINTANA HANAFI, LLP
870 Market Street, Suite 819
San Francisco, CA 94102
Telephone: (415) 504-3121
Facsimile (415) 233-8770

*Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN HIDALGO, COURTNEY BENTLEY, and GAVIN BOOMER,<br><br>Plaintiffs,<br><br>v.<br><br>GLOBAL K9 PROTECTION GROUP LLC,<br><br>Defendant. | Case No. 3:20-cv-02780-VC<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      August 26, 2021<br>Time:     2:00 p.m.<br>Courtroom: 4 – 17th Floor<br>Judge:    Hon. Vince Chhabria |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on August 26, 2021 at 2:00 p.m. or as soon thereafter as the matter may be heard, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Vince Chhabria, Plaintiffs Justin Hidalgo, Courtney Bentley, and Gavin Boomer ("Plaintiffs"), on behalf of themselves and the settlement Class, and Defendant Global K9 Protection Group, LLC ("Defendant" or "Global K9") (collectively, the "Parties") will and do respectfully move this Court for final approval of the class action settlement. The motion is brought in conjunction with the class action settlement which has been preliminarily approved by this Court as fair, adequate and reasonable. In particular, the Parties will move this Court for an order:

1. Finally approving the Stipulation of Class Settlement and Release;

2. Finally certifying the Settlement Class, for the purposes of the Settlement;

3. Finally approving Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, including the costs of administration to CPT Group, Inc. from the Settlement Amount;

4. Entering a judgment consistent with the terms of the Settlement and retaining jurisdiction over the Parties to enforce the terms of the judgment;

5. Ordering a status report for July 2022 to receive a final report on the execution of the Settlement.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed concurrently herewith, the declarations of counsel filed concurrently herewith, all other pleadings, papers, records and documentary materials on file in this action, those matters of which the court may take judicial notice, and any oral argument of counsel made at the hearing on this motion.

Dated: August 10, 2021                    Respectfully submitted,

                                          _/s/ Christian Schreiber____
                                          Christian Schreiber

                                          *Class Counsel*


Dated: August 10, 2021                    Respectfully submitted,

                                          _/s/ Richard E. Bromley_____
                                          Richard E. Bromley

                                          *Defendant's Counsel*

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF THE LITIGATION ................................................................ 2

   A.   Factual Background and Relevant Procedural History.................................. 2

III.  SUMMARY OF SETTLEMENT TERMS ....................................................... 4

IV.   THE SETTLEMENT TERMS AND NOTICE TO THE CLASS ........................ 6

   A.   Class Relief................................................................................................. 6

   B.   Distribution of Settlement Funds to Class Members.................................... 6

   C.   Any Uncashed Checks Will Be Distributed Cy Pres.................................... 7

   D.   Opportunity to Object or Opt Out............................................................... 7

   E.   Released Claims .......................................................................................... 7

   F.   Settlement Administration and Dissemination of Notice to the Class .............. 8

V.    THE SETTLEMENT WARRANTS FINAL APPOVAL ..................................... 8

   A.   The Settlement Is Fair, Adequate, and Reasonable ...................................... 8

      1. The Strength of Plaintiffs' Case............................................................ 9

      2. Defendant's Ongoing Financial Losses Create Risk............................. 10

      3. Risk, Expense, Complexity, and Duration of Further Litigation ................. 11

      4. Risk of Maintaining Class Action Status ............................................. 11

      5. The Amount Offered in Settlement Given Realistic Value of Claims in
      Light of the Litigation Risks ................................................................ 12

      6. Discovery Conducted ........................................................................... 12

      7. The Experience and Views of Counsel ................................................ 13

      8. The Reaction of the Class Members to the Proposed Settlement ................. 14

   B.   There Are No Signs of Collusion ............................................................... 14

VI.   THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS
    PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED............................ 15

VII.  THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS ...................... 16

i

VII. CONCLUSION ................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) ........................................................................ 16

*Chun–Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................. 10, 11

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) .................................................................................... 16

*Edwards v. City of Long Beach*,
   2011 WL 13180208 (C.D. Cal. 2011) ....................................................................... 12

*Eisen v. Carlisle & Jacqueline*,
   417 U.S. 156 (1974) ................................................................................................... 16

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................................................... 14

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 13

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................................... 13

*In re Portal Software Inc. Securities Litig.*,
   2007 WL 4171201 (N.D. Cal. 2007) ......................................................................... 11

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) .................................................................................. 14

*National Rural Telecom. Coop. v. DIRECTTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 10, 12, 14

*Nelson v. Avon Prod., Inc.*,
   2017 WL 733145 (N.D. Cal. 2017) ........................................................................... 10

*Ortega v. J.B. Hunt Transp., Inc.*,
   2018 WL 6118572 (C.D. Cal. 2018) ......................................................................... 11

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 8, 10, 14

*Roes, 1-2 v. SFBSC Management, LLC*,
    944 F.3d 1035 (9th Cir. 2019) ........................................................................... 14, 15

*Schiller v. David's Bridal, Inc.*,
    2012 WL 2117001 (E.D. Cal. 2012) ........................................................................ 15

*Wren* v. *RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. 2011) .......................................................................... 8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................................... 2

Cal. Code Civ. P. § 1542 .............................................................................................. 8

Cal. Lab. Code § 2698 ................................................................................................. 2

**Rules**

Fed. R. Civ. P. 23(e) ......................................................................................... 1, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Justin Hidalgo, Courtney Bentley, and Gavin Boomer ("Plaintiffs") and Defendant Global K9 Protection Group LLC ("Defendant" or "Global K9") hereby move for Final Approval of Class Action Settlement ("Motion") pursuant to Rule 23(e) of the Federal Rules of Civil Procedure on behalf of a class of current and former dog handlers for Defendant. The settlement brings substantial relief to the Class and was achieved with extensive effort and skill and despite substantial risk. Accordingly, the Parties respectfully move the Court for an order (1) finally approving the Stipulation of Class Settlement and Release ("Settlement" or "S.A.")[1]; (2) finally certifying the Settlement Class, for the purposes of the Settlement; (3) finally approving Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, including the costs of administration to CPT Group, Inc. from the Settlement Amount; (4) entering a judgment consistent with the terms of the Settlement and retaining jurisdiction over the Parties to enforce the terms of the judgment; and (5) setting a status report for July 2022 to receive a final report on the execution of the Settlement.

Plaintiffs and Global K9 entered into a Settlement Agreement providing for $425,000, inclusive of attorneys' fees and costs, to compensate 77 class members for the violations they alleged under California and federal wage and hour law. On May 28, 2021, this Court preliminarily approved the class settlement as reasonable and fair, ordered notice to be mailed to the class, and set a date for the Final Fairness hearing. Dkt. 107.

This was an important but challenging and risky case that Class Counsel successfully prosecuted to achieve a $425,000, non-reversionary and non-claims made settlement for a class of modest wage earners and a defendant with serious financial problems exacerbated by the COVID-19 pandemic. In particular, during the course the litigation, Plaintiffs learned details of Defendant's financial instability, due in part to a dramatic drop in passenger air travel caused by the pandemic. In light of the excellent results achieved for the Class, 77 workers will each receive

---

[1] The Settlement is attached as Exhibit A to the Declaration of Christian Schreiber, filed in conjunction with the Parties' Joint Motion for Preliminary Approval. Dkt. 96-02.

1

an average settlement amount of over $3,200 – and in some cases significantly more than that amount depending on length of employment and location. The Settlement will be paid out over four quarterly installments, with Class Counsel deferring most of their fees until later payments. Furthermore, the Settlement is notable because in the event that Defendant fails to timely make all payments, Class members will release no claims, and will be able to keep any money already paid.

Plaintiffs have filed a separate motion for attorneys' fees and costs and service awards to allow Class Members an opportunity to review the request before the hearing on this Motion. Dkt. 109. To date, no Class Members have objected or requested to be excluded from the Settlement. *See* Declaration of Settlement Administrator Emilio Cofinco ("Cofinco Decl."), ¶¶ 12-13. The fees requested by Class Counsel, which amounts to 30% of the common fund established by the Settlement, is substantially *less than* Class Counsel's lodestar in this action and is reasonable and supported. In addition, the costs sought were reasonably incurred in litigating this case and in coordinating a nationwide, multi-year settlement.

The Settlement is fair and reasonable and meets the standard for final approval. The Court should therefore grant this Motion and enter the proposed Order.

## II.    SUMMARY OF THE LITIGATION

The history of this action has been well documented in prior briefing, including the parties' Joint Motion for Preliminary Approval of Class Action Settlement. Dkt. 96.

### A.    Factual Background and Relevant Procedural History.

Plaintiffs filed this class and collective action on April 21, 2020. ECF Dkt. 1. The operative First Amended Complaint ("FAC") was filed on July 13, 2020 (ECF 33) to add claims under the Private Attorneys General Act ("PAGA"), Cal. Lab. C. § 2698, *et seq*. The FAC includes claims under the California Labor Code and the FLSA. Plaintiffs also assert claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. C. § 17200, *et seq.* Plaintiffs seek unpaid wages, including overtime, liquidated damages, as well as civil and statutory penalties, injunctive relief, and attorneys' fees and costs.

2

Plaintiffs and Class members are canine handlers. Together with their canines, they are trained to detect explosives and other hazardous or illegal materials for Global K9 clients around the country. Plaintiffs allege that handlers performed the following non-exempt duties, in addition to their screening duties, on a regular basis: (1) training their dogs (often occurring at or around client sites); (2) keeping their dogs healthy by, for example, taking their dogs to regular veterinary visits, feeding them appropriately, walking them regularly outside screening or "sniff time," and ensuring they were adequately secured for vehicle travel; (3) performing various administrative tasks before and after screenings, such as uploading body-cam security footage to Global K9's servers, logging their time using Global K9's time keeping system, reviewing logs and manifests for cargo to ensure accuracy, completing paperwork for the use of training aides such as explosives, and other routine duties; and (4) travelling from work site to work site within a work day. FAC ¶¶ 19-21.

Global K9 was founded in 2018 and is headquartered in Opelika, Alabama. FAC ¶ 13. Plaintiffs allege that Global K9 classified Plaintiffs and all similarly situated canine handlers as exempt from overtime until November 1, 2019. FAC ¶ 19. After this date, Global K9 reclassified all handlers as eligible for overtime, though their duties remained the same. *Id.* Plaintiffs allege that Global K9 paid handlers a monthly stipend intended to compensate them for their canine care, mileage, and cell phone expenses, which was inadequate to cover their actual costs. FAC ¶ 23.

The Court conditionally certified the FLSA collective action after the Parties' engaged in discovery. ECF 37. Notice was issued and the opt-in period closed on November 10, 2020, and 45 workers consented to join after receiving notice. Of these, 32 live outside California.

The Parties thereafter engaged in lengthy settlement negotiations overseen by Magistrate Judge Laurel Beeler. Dkt. 70, 82. The monetary terms of the Settlement were reached in principle after an October 2020 Settlement Conference and the parties negotiated the final terms of the Settlement in the ensuing weeks. The Settlement was executed on February 9, 2021.

The Settlement was the result of substantial discovery. Plaintiffs propounded 50 Requests for Production of Documents, 10 Requests for Admission, and 14 Interrogatories and Defendant served responses. Defendant provided electronic timekeeping and payroll records for much of the class period, which Plaintiffs had analyzed by an expert prior to the settlement conference. Dkt. 96-02 (Schreiber Decl. ¶¶ 16-17).

The Court granted preliminary approval of the Settlement on May 18, 2021. Dkt. 107. Notice to the Class was sent on June 18, 2021. Cofinco Decl. ¶ 8.

### III.    SUMMARY OF SETTLEMENT TERMS

1.    The Gross Settlement Amount is $425,000. That sum includes all payments to Settlement Class Members, attorneys' fees, case costs, the Class Representative Service Awards for the three named Plaintiff Class Representatives, settlement administration costs, and the PAGA payment to the LWDA. Dkt. 96-02 (Schreiber Decl., Exh. A).

2.    In a separate motion (Dkt. 109), Plaintiffs seek reasonable attorneys' fees equaling 30% of the Gross Settlement Amount, which is $127,500. *Id.* Plaintiff also seeks case costs in the amount of $31,007.85, which includes $15,000 for settlement administration costs, and Class Representative Service Awards of $5,000 for each of the three named Plaintiffs. *Id.*

3.    If the Court grants these requests, the Net Settlement Fund will be:

| | |
|---|---|
| **Gross Settlement Fund:** | **$ 425,000.00** |
| Less Attorneys' Fees | -$ 127,500.00 |
| Less Costs Payment | -$ 16,007.85 |
| Less Settlement Administration | -$ 15,000.00 |
| Less Service Awards | -$ 15,000.00 |
| Less PAGA Payment to LWDA | -$ 3,750.00 |
| **NET SETTLEMENT FUND** | **$247,742.15** |

Cofinco Decl. ¶ 14.

4.    There are 77 Participating Class Members. The highest Settlement share to be paid is $5,953.04; the lowest Settlement Share to be paid is approximately $436.49. The average Settlement share to be paid is approximately $3,217.43. Cofinco Decl. ¶ 15.

5.    Each Settlement Class Member will receive a proportionate share of the Net

Settlement Fund that is equal to (i) the number of workweeks he or she worked during the Class Period multiplied by the Settlement Class Member's rate of pay, divided by (ii) the total number of workweeks worked by all Participating Class Members in each Class Period. S.A. § IV.J.2.

6.    The Settlement allocates $5,000.00 to PAGA penalties, which, pending this Court's approval, will be allocated pursuant to statute as follows: of the $5,000, $3,750 (75%) will be paid to the Labor and Workforce Development Agency ("LWDA"), and $1,250 (25%) will be allocated to the California Class members as part of the additional California Class Member payment each will receive. S.A. § IV.J.1.

7.    This is not a claims-made settlement. All Settlement Class Members will automatically receive a share of the Settlement. California Class Members are not permitted to opt out of the PAGA settlement; their share of the PAGA penalties comprise part of the $1,000 additional payment that California Class Members receive under the Settlement. *See* Cofinco Decl, Exh. A (Notice at ¶ 8).

8.    After the entry of an order finally approving the Settlement, Global K9 shall deposit the first installment payment of $50,000 into a Qualified Settlement Fund before the end of the fiscal quarter, September 30, 2021. CPT will thereafter mail settlement checks to Class Members.

9.    In the event Global K9 defaults on its obligations under the Settlement, Class Members will be able to retain any payments already received without penalty and will release no claims against Defendant. S.A. § IV.J.4.

10.    Checks issued to Class Members pursuant to the Settlement shall remain negotiable for a period of 180 days from the date of mailing. Settlement, ¶ IV.L. In the event that any such checks remain uncashed after the expiration of this period, or an envelope mailed to a Class Member is returned and no forwarding address can be located for that individual after reasonable efforts have been made, any unclaimed funds will be redistributed to the Class on a pro-rata basis. Thereafter, any residual from uncashed checks shall be donated to a *cy pres* charity. *Id.* The Parties have designated Legal Aid at Work as the *cy pres* beneficiary in this case. *Id.*

11.     The Parties request that the Court retain continuing jurisdiction over the Parties and the Class Members to enforce the terms, conditions, and obligations of the Agreement.

## IV.     THE SETTLEMENT TERMS AND NOTICE TO THE CLASS

The Settlement Class is 77 handlers, comprised of the 43 individuals who reside in California and are members of a California Class covered by Rule 23. Plaintiffs all worked for Defendant in California. The Settlement will resolve the claims of these 77 individuals according to the following terms.

### A.     Class Relief

Defendant has agreed to pay $425,000 to resolve the claims of Plaintiffs and the Settlement Class. The Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to all Class Members in settlement of their claims, including Class members' portion of withholdings, contributions, deductions, taxes, fees and any other amounts due to government agencies and/or tax authorities in relation to any payments pursuant to the Agreement; (2) civil penalties paid to the State of California in settlement of the PAGA claims (the "LWDA Payment"); (3) all claims for attorneys' fees and expenses approved by the Court; (4) all costs necessary to administer the Settlement, including payment for the services of the Settlement Administrator; and (5) payment of a service award to Plaintiffs not to exceed $5,000 each, subject to Court approval. *See* S.A. § I. Global K9 will separately pay its portion of taxes, contributions, fees and any other amounts owed to government agencies and/or tax authorities in relation to any payments pursuant to the Agreement. S.A. ¶ 19.

### B.     Distribution of Settlement Funds to Class Members

There will be a direct monetary distribution to the 77 Class Members. Class Members will not need to file a claim or do anything affirmative to receive payment. The payments will be made in four consecutive quarters following the Court's final approval of the Settlement. S.A. § IV.J.

The amount paid to all Class Members will be based upon two factors. First, a pro rata share of the Class Member's workweeks in the Class Period. S.A. § IV.J.4. There are 5,155 workweeks worked by Class members during the Class Period (an average of 69 weeks per Class member). Second, California Class members will receive an additional payment of $1,000. *Id.* § IV.J.1. This payment reflects the additional claims these Class members have under the California Labor Code, including claims for meal and rest breaks, reimbursement of business expenses, wage statement and waiting time penalties under Labor Code sections 203 and 226, and their portion of PAGA penalties.

The average recovery per class member is anticipated to be approximately $3,217.

### C.    Any Uncashed Checks Will Be Distributed Cy Pres.

All settlement funds will be paid out, and none will revert to Global K9. *Id.* § I (pp. 2-3). Subject to the Court's approval, after all payments have been issued to the Class Members, any amount remaining in the Settlement Fund from uncashed checks, after reasonable efforts have been made to locate Class Members, will be paid to Legal Aid at Work ("LAAW"), a California-based nonprofit organization that provides legal aid to low-income, working families, including in the area of wage and hour law. *Id.* § IV.J.5 (p. 20). LAAW's mission of enforcing worker protections through litigation and policy advocacy furthers the interests of California workers in preventing and remedying wage theft and other labor issues. *See* Procedural Guidance § 8.

### D.    Opportunity to Object or Opt Out

Class Members were provided an opportunity to opt out of the Settlement or object. *Id.* § IV.E-F. The Class Notice approved by the Court provided instructions and requirements for Class Members to object to the Settlement or to opt out of the Settlement. *Id.* To date, no Class member has objected or opted out of the Settlement. Cofinco Decl. ¶¶ 12-13.

### E.    Released Claims

The Settlement sets forth the released claims in paragraphs 4 and 12 for California Class members and Collective members. The claims released are clearly defined and limited to those "claims raised in the operative Complaint and/or through the Settlement Conference. Such claims

will be released through February 15, 2021." *See* Procedural Guidance § 1c. The claims raised in the operative Complaint and Settlement Conference are coextensive. Dkt. 96-02 (Schreiber Decl. ¶ 37). The named Plaintiffs have executed a broader personal release that includes a waiver of unknown claims under California Civil Code section 1542. S.A. ¶ 24.

> ### F.    Settlement Administration and Dissemination of Notice to the Class

CPT distributed the Class Notice, maintained a settlement website, and maintained a toll-free telephone number via which Class Members could direct questions about the Settlement. Cofinco Decl. ¶ 3. Notice was emailed to 74 Class members and mailed to 3 Class members after an address verification through the National Change of Address database. *Id.* ¶¶ 6-10.

CPT Group will also administer and distribute all settlement-related payments. S.A. § IV.D.

## V.    THE SETTLEMENT WARRANTS FINAL APPOVAL

> ### A.    The Settlement Is Fair, Adequate, and Reasonable

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," the Court may consider some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[2] and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Plaintiffs address each relevant factor below.

---

[2] This factor is not addressed because there is no governmental participant. *See, e.g.*, *Wren* v. *RGIS Inventory Specialists,* Case No. C-06-05778 JCS, 2011 WL 1230826 at *10 (N.D. Cal. Apr. 1, 2011) ("Because there is no governmental entity involved in this litigation, the seventh factor is inapplicable").

### 1.    The Strength of Plaintiffs' Case

Although Plaintiffs maintain that their claims are meritorious and believe they would ultimately succeed in obtaining class certification and prevail on the merits at trial, the litigation in this action to date has informed the Parties of the risks of continued litigation.

In response to Plaintiffs' claims, Defendant raised several defenses. With regard to the initial misclassification of Handlers, Defendant notes that the misclassification lasted only about 11 months and was rectified starting November 1, 2019. It contends that no (or very little) overtime would have been worked during those 11 months because, as a start-up company, Handlers were not scheduled to work full 40-hour workweeks, and many did not work full 8 hour days during that time period. And for those Handlers who worked more than 93 hours during a semi-monthly period, Defendant contends that it paid Handlers additional "incentive pay." Defendant further contends that, in 2020, while its business dropped significantly due to the pandemic and airport business drop off, it overpaid Handlers for hours not worked. Defendant contends that because it is costly to train Handlers, it wanted to keep them from leaving for competitors and, as a result, it paid its Handlers for full-time work even though Handlers were not working full-time shifts for much of 2020. In other words, according to Defendant, Handlers were significantly overcompensated and Defendant would be entitled to an offset for its overpayments.

In response to Plaintiffs' contention that Handlers were not adequately compensated for taking care of the dogs during off-hours, Defendant contends that 30 minutes per day of additional time were paid to Handlers for taking care of the dogs. The parties dispute whether 30 minutes per day was adequate compensation. Defendant also disputes whether Class members missed meal and rest breaks, and noted that under TSA Guidelines, each canine was required to receive hour-long breaks for every two hours of work. Thus, according to Defendant, it fulfilled its obligation to ***provide*** Handlers with more than enough time for meal and rest breaks. Defendant also contends that prior to January 1, 2020, Handlers were paid $420 per month as a

9

regular canine care stipend, in addition to veterinary expenses for on-the-job injuries, which it contends exceeded actual costs of care.

Plaintiffs do not share Defendant's views of the claims in this case, but they do acknowledge that Defendant's contentions raise several issues that make a successful litigation of all claims risky and not certain.

### 2.    Defendant's Ongoing Financial Losses Create Risk

In addition to the risks outlined above regarding the merits of Plaintiffs' claims, there also is a significant issue of whether Plaintiffs would ever recover any amount from Defendant if litigation continues. Defendant has offered the testimony of two individuals with information about Defendant's finances. Class Counsel determined that further litigation would likely create risks sufficient to imperil the Class's opportunity to achieve a monetary settlement of any amount. Defendant has noted through its financial records that during its short existence since 2018, it has never actually been profitable. Every year of its existence it has actually lost money – *i.e.*, it lost $9 million during its first full year in 2019, it lost another $7 million in 2020, and its financial prospects for 2020 continue to be uncertain as it seeks additional investors. *See* Dkt. 96-06, 96-07.

"Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Nelson v. Avon Prod., Inc.*, No. 13-CV-02276-BLF, 2017 WL 733145, at *3 (N.D. Cal. Feb. 24, 2017) (quoting *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). "Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement." *Id*. (citing *Rodriguez*, 563 F.3d at 966).

Despite this risk, however, Plaintiff secured a substantial recovery for the Settlement Class. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Telecom. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, pursuant to the Settlement, Participating Class Members will receive an average net recovery of $3,217. Cofinco Decl. ¶ 15. The Settlement therefore provides meaningful monetary

relief to Class Members for the disputed wage and hour violations. Thus, this factor supports final approval.

### 3.      Risk, Expense, Complexity, and Duration of Further Litigation

This factor also supports final approval. Liability is highly contested in this matter and both sides will face significant time, expenses, and risk if this action continues. Dkt. 96-01 (Schreiber Decl. ¶¶ 28-29). Although the Parties engaged in extensive discovery, investigation, and law and motion practice prior to reaching a settlement, there are still "barriers plaintiffs must overcome in making their case." *McKee Foods Corp.*, 716 F. Supp. 2d at 851; Dkt. 96-01 (Schreiber Decl. ¶¶ 18-20, 28-29).

As noted in detail in Plaintiff's Motion for Preliminary Approval, Global K9 denies liability on every claim. Dkt. 96 (pp. 16-21). As described above, Global K9 has also raised numerous factual and legal defenses to Plaintiff's claims, and the risk created by the Defendant's financial condition is significant and potentially dispositive of any recovery.

The Parties would be required to expend considerable time and resources in preparation for class certification and trial. As a result, the Parties would incur considerably more attorneys' fees and costs through trial. *See* Dkt. 96-01 (Schreiber Decl. ¶ 29). The Settlement avoids those risks and the accompanying expense. *See, e.g.*, *In re Portal Software Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

Therefore, this factor supports final approval.

### 4.      Risk of Maintaining Class Action Status

The Court has not yet ruled on a motion for class certification. Plaintiff's motion for class certification would have been hotly contested by Global K9. Absent settlement, there was a risk that there would not be a certified class at the time of trial, or that the class would be decertified prior to trial. *See, e.g.*, *Ortega v. J.B. Hunt Transp., Inc.*, No. 207CV08336RGKAFM, 2018 WL 6118572, at *5 (C.D. Cal. Aug. 7, 2018) ("Discovery has revealed that individual issues predominate in each of Plaintiff's claims. Consequently, the Court must decertify the class.")

This factor, therefore, supports final approval.

### 5. The Amount Offered in Settlement Given Realistic Value of Claims in Light of the Litigation Risks

The proposed Settlement provides a substantial monetary recovery for the Settlement Class that accurately reflects the risks and defenses Plaintiff faced. Dkt. 96-01 (Schreiber Decl. ¶¶ 30).

Plaintiff calculated the reasonable settlement value of the claims in this case, including the PAGA claim, to be approximately $2,586,183.91 given approximately 77 class members. Dkt No. 96 (pp. 22-25); Dkt. 96-01 (Schreiber Decl. ¶ 34). The proposed Settlement represents 16% of the total potential recovery in this case. As such, it is an excellent result, especially in light of the other facts.

Considering the risks associated with continued litigation including proceeding to trial further favors final approval. *See Edwards v. City of Long Beach*, 2011 WL 13180208, at *3, n. 5 (C.D. Cal. Oct. 31, 2011) ("[t]he reasonableness of a settlement is not dependent upon it approaching the potential recovery plaintiffs might receive if successful at trial"); *Nat'l Rural Telecomm. Corp.*, 221 F.R.D. at 527 ("a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"). A certain – and substantial – result for Class Members now, rather than a possibly larger, but contingent one at some indefinite time years in the future, favors preliminary approval of the Settlement.

After deducting the proposed amounts for Court-approved Class Representative Service Awards, costs of settlement administration, allocation to the LWDA, and approved attorneys' fees and costs, the settlement requires Global K9 to pay an estimated Net Settlement Amount of $232,742.15 to Participating Class Members. The average Individual Settlement Payment to Class Members is $3,217. Cofinco Decl. ¶ 15. This is an excellent result for the Class Members.

Thus, this factor weighs in favor of final approval.

### 6. Discovery Conducted

Class Counsel have investigated the action, reviewed discovery, worked with multiple experts, and engaged in motion practice. The settlement negotiations were complicated and delicate. The work of Class Counsel and the Class Representatives required skill and expertise.

Ultimately, Class Counsel was able to review all the relevant policies and procedures operative during the Class period, time and payroll records, as well as financial records. In total, Class Counsel is able to make an informed decision about the Settlement. Schreiber Decl. ¶ 4.

Thus, this factor also supports final approval.

### 7.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

In addition to being thoroughly familiar with this case, Class Counsel have significant experience in handling wage and hour class actions such as this. *See* Dkt. 109-1 (Declaration of Christian Schreiber In Support of Motion for Attorneys' Fees and Costs and Service Awards ["Schreiber Fee Decl."], ¶¶ 10-12); Dkt. 109-6 (Declaration of Ramsey Hanafi In Support of Motion for Attorneys' Fees and Costs and Service Awards ["Hanafi Fee Decl."], ¶¶ 5-7).

Plaintiffs and Class Counsel have vigorously prosecuted this case and will continue to do so. *See* Dkt. 109-1 (Schreiber Fee Decl. ¶¶ 17-26, 31-34). Class Counsel's investigation and analysis informed Class Counsel's assessment of the merits and risks of the case and the benefits of the Settlement. *Id.* ¶¶ 16, 22, 27. For purposes of Settlement, the Parties have determined that the Settlement represents a fair and reasonable compromise of disputed claims for wages and other monetary and non-monetary relief, following a thorough investigation. Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay, the risk that Global K9 will prevail on its defenses, and potential appellate issues. *Id.* ¶ 16.

Therefore, the recommendation of Class Counsel also weighs in favor of approving the Settlement.

### 8.    The Reaction of the Class Members to the Proposed Settlement

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. *See, e.g.*, *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The deadline for filing objections or opting out of the Settlement was July 23, 2021. As of the date of this filing, CPT received no requests for exclusion from the Settlement and no objections to the Settlement. Cofinco Decl., ¶¶ 12-13.

This factor, therefore, currently weighs in favor of final approval.

For all of the reasons set forth above, all of the factors identified in *Rodriguez,* 563 F.3d at 963, support a finding that the Settlement is fair, adequate, and reasonable.

### B.    There are No Signs of Collusion

In *Roes, 1-2 v. SFBSC Management, LLC*, the Ninth Circuit reiterated that where, as here, the parties have negotiated a settlement agreement before a class has been certified, "settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." 944 F.3d 1035, 1048-49 (9th Cir. 2019) (internal quotation marks omitted). Specifically, "such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

The "subtle signs" of collusion which district courts should look for include:

(1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

*Id.* (citations omitted).

Here, none of these factors are present. For example, Class Counsel is not receiving a proportionate distribution of the Settlement. Rather, Class Counsel has requested a share of the

14

common fund. That fund is all cash and does not include any coupon-like features. *Cf. Roes 1-2*, 944 F.3d at 1053 (noting that some of the same concerns applicable to coupon settlements applied to the settlement in that case, which included dance fee payments that were arguably similar to coupons). Class Counsel is deferring fees to later payments in order to facilitate more expeditious relief to the Class.

Furthermore, there is no clear sailing agreement. The Settlement is silent in that regard. *Cf. id.* at 1050 (noting that "the settlement agreement included a clear sailing agreement, whereby the defendants agreed that they would not object to an attorneys' fees-and-expense award of up to $1 million").

Finally, the Settlement is explicitly non-reversionary. *See* Dkt. No. 96-02 (Schreiber Decl. Exh. A [Settlement Agreement at 2, 3]).: The Settlement is non-reversionary and is not on a "claims made" basis. No portion of the Settlement shall revert to, or become due and payable to, Defendant, or any person or entity other than Class Members and the LWDA, and there will be no reversion to Global K9 under any circumstance.

For all of these reasons, the "subtle signs" of collusion are not present here and the Court should approve the Settlement.

## VI.    THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED

In the Preliminary Approval Order the Court certified the Settlement Class for settlement purposes only. *See* Dkt. No. 107 at ¶ 2. The Court found that the Settlement Class met the requirements of Rule 23 (a) and Rule 23(b)(3). *Id*. Because circumstances have not changed, and for the reasons set forth in the motion for preliminary approval, *see* Dkt. No. 96 (pp. 4-7, 13-23), Plaintiff requests that the Court finally certify the Settlement Class for settlement purposes under Rule 23(e). *See Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *8 (E.D. Cal. 2012) ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

## VII.    THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

In accordance with the notice plan and the Court's Preliminary Approval Order, on June 18, 2021, CPT Group emailed the Class Notice to the email addresses of all Class members, and went live with a website that posted the Class Notice and other critical case-related filings. CPT ultimately mailed the Class Notice to three Class Members via First Class mail whose emails were returned as undeliverable. Cofinco Decl. ¶ 10.

The Class Notice explained the claims in the litigation, the key terms of the Settlement, the rights and releases of claims under the Settlement, the right to object to the Settlement, the right to opt out of the Settlement, the right to appear at the final approval hearing, the recovery formula and expected recovery, and the contact information for Class Counsel. Cofinco Decl., Exh. A.

Further, the 35-day deadline to object or opt out approved by the Court in the Preliminary Approval Order satisfies the notice requirements of Rule 23 and protects the due process rights of the Class impacted by the Settlement. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 193 (S.D.N.Y. 2012) ("Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact."). The Declaration of the Settlement Administrator includes testimony about the Notice process and the absence of opt-out and objectors.  *See generally* Cofinco Decl.

CPT's work in connection with this matter will continue with the calculation of the settlement checks, issuance and mailing of those settlement checks, and the necessary tax reporting on such payments over four consecutive quarters.

For these reasons, Plaintiff submits that the notice procedure implemented for this Settlement meets the requirements of due process, and requests that the Court approve the payment of $15,000 to CPT for administering the Settlement. Cofinco Decl. ¶ 16.

## VIII.  CONCLUSION

The Settlement is fair, adequate, and reasonable. It will result in substantial payments to Settlement Class Members, is non-collusive, and was achieved as a result of informed, extensive, and arm's-length negotiations between counsel for the respective Parties, who are experienced in wage and hour class action litigation. For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court grant final approval of the Settlement and enter an Order as follows:

1.    Finally approving the Settlement;

2.    Finally certifying the Settlement Class, for the purposes of the Settlement;

3.    Finally approving Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, including the costs of administration to CPT Group, Inc. from the Settlement Amount;

4.    Entering a judgment consistent with the terms of the Settlement and retaining jurisdiction over the Parties to enforce the terms of the judgment;

5.    Setting a status report for July 2022 to receive a final report on the execution of the Settlement.


Date:   August 10, 2021                              OLIVIER SCHREIBER & CHAO LLP

                                                     QUINTANA HANAFI LLP

                                                     */s/ Christian Schreiber*
                                                     Christian Schreiber

                                                     *Class Counsel*

Date:   August 10, 2021                    CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

                                           */s/ Richard E. Bromley*
                                           Richard E. Bromley

                                           *Defendant's Counsel*